FILED
 2011 Jul-18  AM 10:46
U.S. DISTRICT COURT
   N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| LARY NOBLE COWART, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>)<br>) | CIVIL ACTION NO. 10-G-2745-M |

### MEMORANDUM OPINION

The plaintiff, Larry Noble Cowart, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether he has a severe impairment;

(3)    whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case, ALJ Jack F. Ostrander determined the plaintiff met the first two tests, but concluded that while he has an impairment or combination of impairments considered "severe," he did not suffer from a listed impairment. [R. 35].  In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform less than a full range of medium work, and is therefore not disabled.  [R.35, 38].

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the

alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

5

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited. Such a hypothetical question would allow disability claims to be expedited in cases in

which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

### WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

## DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "coronary artery disease with exertional angina, hypertension, hyperlipidemia, peptic ulcer disease and back pain with degenerative disc disease of the spine. . . ." [R. 34].  However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ." [R. 34].  The ALJ concluded under step four of the sequential evaluation that the plaintiff cannot perform his past relevant work as a pilot. [R. 37]. Based on the vocational expert's responses at the hearing, the ALJ found the plaintiff able to perform other work in the national economy, specifically as a janitor. [R. 38].

The plaintiff in this case was 62 years old at the time of the ALJ's decision, and is classified as a person of advanced age.  He claims disability from June 30, 2006. At the ALJ hearing, the plaintiff testified he experiences chest pain and shortness of breath upon exertion. [R. 13-14].  Because of back pain and knee pain, the plaintiff testified that he cannot stand for a long time. [R. 14-15].  In his Physical Activities Questionnaire, the plaintiff estimated that, because of chest pain and shortness of breath, he could stand two hours, walk 20 minutes, and sit two hours at a time. [R. 114, 119].

The medical evidence of record shows that on July 21, 2004, the plaintiff presented to St. John's Hospital emergency room in Idaho Falls, Idaho[1], after suffering a

---

[1] The plaintiff told Douglas U. Blank, M.D., that he lives in Alabama, but was in Idaho vacationing. [R. 151].

8

myocardial infarction. The doctors there performed an angioplasty and placed a intracoronary stent in the right coronary artery. [R. 157]. He was discharged and instructed to obtain cardiac rehabilitation upon his return to Alabama. [R. 160]. Back home, on August 4, 2004, the plaintiff began treatment with Robert Brock, M.D., who, because of the plaintiff's recurrent angina, recommended a follow-up cardiac catheterization. [R. 173-74]. An August 6, 2004, the cardiac catheterization showed moderate coronary artery disease, confirmation of the stent placement, and mild left ventricular dysfunction. [R. 178].

On July 13, 2007, the plaintiff was seen by Younus M. Ismail, M.D., for a consultative physical examination at the behest of the Commissioner. [R. 190-92]. He told Dr. Ismail that:

> he has off and on chest pain and he gets short of breath on exertions. The patient had [a heart attack in July 2004] and since then he is not able to move around much. He stays tired all the time and he starts getting shortness of breath and chest pain on the exertion. The patient used to work as a pilot, but since MI he is not able to went [sic] back to his work because they do not allow him to fly the plane. In addition to this shortness of breath and tiredness and off and on chest pain, he is complaining of some back pain and was diagnosed with some degenerative disc disease of the spine. He is presently not taking any medicines for it. The patient wants [sic] to have high cholesterol. The patient was on Lipitor before, but presently not taking anything right now.

[R. 190][2]. Dr. Ismail noted that after his heart attack, doctors placed a stent in a coronary artery. Id. However, except for some pain and tenderness in the lumbar spine, the

---

[2] Dr. Ismail's narrative refers to a January 2001 myocardial infarction, but it is obvious from the record that the plaintiff's MI occurred in July 2004.

plaintiff's examination was essentially normal. [R. 190-92]. Dr. Ismail diagnosed coronary artery disease with exertional angina, hypertension, hyperlipidemia, peptic ulcer disease, and back pain with degenerative disc disease of the spine. [R. 192]. He made this statement:

> The patient is 60-year-old male with a history of coronary artery disease. <u>He is unable to work because of his cardiac problem and has some limitations on the [sic] movement especially on exertion. He gets short of breath</u>. Proper medical evaluation, occupational and cardiac rehabilitation, as well as physical therapy will be beneficial.

<u>Id</u>.(emphasis added) Although this July 2007 examination was a consultative examination, the plaintiff began a treating relationship with Dr. Ismail on August 7, 2007. Dr. Ismail noted off and on pain in the plaintiff's extremities and back, and diagnosed hypertension, coronary artery disease, hyperlipidemia and back pain and arthritis. [R. 234]. Dr. Ismail then saw the plaintiff approximately every three months until April 10, 2009. [R. 226-33]. During these visits, Dr. Ismail continued his diagnoses, with the added problems of peptic ulcer disease, peripheral edema and erectile dysfunction. <u>Id</u>.

In applying the Eleventh Circuit's pain standard, the ALJ found that medical evidence shows that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with his finding that the plaintiff could perform a less than full range of medium work. [R. 36]. The ALJ continued:

> In terms of the claimant's alleged difficulty lifting, carrying[,] standing and walking, the undersigned notes that he should be capable of lifting fifty pounds occasionally and twenty-five pounds frequently. The undersigned further notes that he should be capable of sitting six hours in an eight hour workday with normal breaks, as well as, standing and/or walking for six hours in an eight hour workday with normal breaks.
>
> The claimant's attorney proposed that the claimant would be limited with standing and walking and would need to rest at will, which would significantly impact his ability to perform a job for a full eight hour workday. However, there is no medical record that supports such extreme limitations.

Id. This finding is not supported by substantial evidence. Therefore, because the ALJ failed to properly discredit the plaintiff's credibility, his testimony must be accepted as true.

In his decision, the ALJ rejected the opinion of Dr. Ismail, opting instead to adopt the findings of Richard H. Whitney, Jr., M.D.[3], the State Agency non-examining reviewing physician. [R. 36]. Dr. Whitney's review consisted of reciting Dr. Ismail's findings, and then disagreeing with them. [R. 195-96, 199, 200]. Dr. Whitney then summarily made an exertional limitation finding that the plaintiff can occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. [R. 195]. The ALJ gave little weight to Dr. Ismail's opinion "because Dr. Ismail's statement is more in the nature of a conclusory statement rather than a statement as to the claimant's actual residual functional capacity." [R. 36]. The ALJ's reliance on the opinion of the State Agency non-examining

---

[3] The record reflects that Dr. Whitney's primary speciality is pediatrics. [R. 218]. Dr. Ismail's primary speciality is internal medicine. [R. 216].

reviewing physician over the consulting examiner, who then became the plaintiff's treating physician, is misplaced, and is not supported by substantial evidence.

In order to find the plaintiff not disabled, the ALJ found he was capable of doing medium work[4]. The court notes that this plaintiff, as a person of advanced age, would meet the Medical Vocational Guidelines at the light level of exertion if his skills were not transferrable. The vocational expert testified that the plaintiff has no transferrable skills to light work. [R. 25]. The ALJ erred in failing to find the plaintiff disabled under Medical Vocational Rule 202.02. Any conclusion by the ALJ that the plaintiff could perform more than light work is not supported by substantial evidence.

---

[4] The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10 *6.

Additionally, the vocational expert testified that if the plaintiff were limited to the option of being able to rest at will, stand for no more than an hour, or to walk for no more than 20 to 25 minutes, he would not be able to perform the job of janitor as determined by the ALJ. [R. 26]. Because the plaintiff's testimony regarding his exertional limitations must be taken as true, the plaintiff is disabled within the meaning of the Social Security Act.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

DONE and ORDERED 18 July 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.